UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>      vs.<br><br>DUSTIN ISLAND,<br><br>                    Defendant. | CR. 19-50150-JLV<br><br><br><br>ORDER |

## INTRODUCTION

Defendant Dustin Island, appearing *pro se*, filed a motion for
compassionate release together with a packet of his medical records and
administrative records from the Bureau of Prisons ("BOP").   (Dockets 56 &
56-1),   Pursuant to Amended Standing Order 20-06, the Federal Public
Defender for the Districts of South Dakota and North Dakota ("FPD") and the
United States Attorney for the District of South Dakota filed records,
submissions and briefing on his motion.   (Dockets 57, 59 & 62-64).   The court
ordered the government to acquire and file additional BOP medical records of Mr.
Island.   (Docket 65).   The supplemental medical records were filed.   (Dockets
66-67).   The parties then filed simultaneous supplemental briefs.   (Dockets 68
& 70).   For the reasons stated below, defendant's motion is denied.

### AMENDED STANDING ORDER 20-06

Amended Standing Order 20-06,[1]  captioned "Establishing a Procedure for
Compassionate Release Motions Under the First Step Act," put in place "a

---

[1]See https://www.sdd.uscourts.gov/socraa.

procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(d)(l)(A), in the wake of the spread of the COVID-19 virus into the federal prison system."  (ASO 20-06 at p. 1).  By the standing order, the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]"  Id.

¶ 4.  Those categories are:

    a.    High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § l.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .

    b.    Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.

    c.    Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.

    d.    Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id.  The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office."  Id.

## MR. ISLAND'S CLASSIFICATION

On March 31, 2022, the FPD and the U.S. Attorney filed a notice designating Mr. Island as a High Priority case.   (Docket 57).

## FACTUAL BACKGROUND

Mr. Island pled guilty to possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 846, 841(a)(1) & 841(b)(1)(B).   (Dockets

26 & 27).   On June 9, 2020, Mr. Island was sentenced to a term of imprisonment of 92 months followed by four years of supervised release. (Dockets 38 & 39 at pp. 2-3).   A presentence investigation report ordered by the court calculated Mr. Island's advisory guideline range as 92 to 115 months of imprisonment based on a total offense level of 23 and his criminal history category VI.   (Docket 32 ¶ 81).

Mr. Island is currently an inmate at FMC Butner, a secure medical facility in Butner, North Carolina.   Fed. Bureau Prisons, https://www.bop.gov/inmateloc/ (last checked August 28, 2022).   The total inmate population at FMC Butner is currently 867 persons.   https://www.bop.gov.locations/institutions/buh/ (last checked August 28, 2022).   As of August 28, 2022, there is one active COVID-19 cases among inmates and seven active cases among staff at FMC Butner.   https://www.bop.gov/coronavirus/ (last checked August 28, 2022).   FMC Butner reported five deaths of inmates and no deaths of staff as a result of COVID-19, and 204 inmates and 273 staff have recovered as of August 28, 2022.   Id.

Mr. Island has a scheduled release date of May 19, 2026.   https://www.bop.gov/inmateloc/ (last checked August 28, 2022).   See also Docket 59 at p. 575.   As of August 28, 2022, he has served approximately 36.5 percent of his statutory sentence, and under his current status in the BOP, Mr. Island is eligible for home detention on November 11, 2025.   Id. at p. 574.   Mr. Island is 43 years old.   Id. at p. 1.

## MR. ISLAND'S MOTION

Mr. Island's *pro se* motion seeks compassionate release on the basis of extraordinary and compelling reasons in light of his medical diagnosis of "Type B large Cell Non-Hodgkin's Lymphoma, [a] rare and very aggressive cancer of the blood" and his confinement during the COVID-19 pandemic.   (Docket 56 at p. 1).   He completed "6 rounds of R-CHOP chemotherapy that was extremely debilitating and painful, both physically and mentally" but "chemotherapy quit effectively destroying the cancer . . . by the 4th round."   Id.   Because his floor in FMC Butner was quarantined as a result of COVID-19, radiation therapy was delayed.   Id.   Once radiation therapy was administered to his throat and neck, Mr. Island reports it was "destroying" his mouth, tongue and throat, making it "nearly impossible . . . to eat or drink."   Id.   Mr. Island asks to be released so he can access the "effective treatment centers close to home in Rapid City" and have the support of his wife and other family members.   Id.

On April 7, 2022, the FPD filed a supplement to his *pro se* motion. (Docket 62).   Mr. Island, through counsel, argues that in addition to his cancer condition he is at increased risk of severe illness or death from COVID-19 due to diagnoses of cancer, hypertension, obesity, sleep apnea, being immunocompromised and anxiety disorder.   Id. at p. 6.   Mr. Island also contends the 18 U.S.C. § 3553(a) factors favor a sentence of time served.   Id. at 13.   In support of his argument, Mr. Island states he has no disciplinary writeups in custody, has taken several educational courses, has become a math

4

tutor to other inmates, has enrolled in an anger management course and has participated in a drug abuse program.   Id.   Mr. Island contends his criminal history consists of offenses related to the possession and use of drugs and driving offenses.   Id. at p. 14.   He points out his history of criminal conduct is driven by his family circumstances in which he "experienced significant trauma, including sexual, physical, and emotional abuse from family members and strangers."   Id. (referencing Docket 32 ¶ 59).   Mr. Island concludes:

> Because of [his] aggressive Diffuse Large B Cell Non-Hodgkins Lymphoma diagnosis and underlying medical conditions during the COVID-19 pandemic, a sentence of time served would be sufficient, but not greater than necessary to accomplish the goals of federal sentencing.   This is particularly true if the court orders a period of home confinement as a condition of supervised release.

Id.

The court conducted a detailed review of Mr. Island's medical records. Mr. Island's medical records confirm the following medical conditions:

- Stage II Diffuse Large B Cell Non-Hodgkin's Lymphoma.   (Docket 59 at pp. 3, 47, 258 & 304);

- Hypertension.   Id. at p. 193;

- Anxiety disorder.   Id. at pp. 245 & 287-88; and

- Overweight, body mass index ("BMI") of 28.7.   Docket 67 at p. 2

COVID-19

By the BOP medical records, it appears Mr. Island tested positive for COVID-19 on December 15, 2020, while incarcerated in FCI Florence in Florence, Colorado.   (Docket 59 at p. 113).   After refusing the Moderna

5

COVID-19 vaccine on April 20, 2021, Mr. Island received the first Pfizer COVID-19 vaccination on September 1, 2021, and the second dose on September 21, 2021.   Id. at p. 362.   There is no record of Mr. Island receiving either the first or second booster shots from either Pfizer or Moderna as recommended by the CDC.   See Dockets 59, 66 & 67.

Obesity

Mr. Island is 69 inches tall and his weight as of July 12, 2022, is 194.3 pounds.   Docket 67 at p. 2.   Based on his height and weight, Mr. Island has a BMI of 28.7, which places him in the overweight category.   See Adult BMI Calculator, Ctr. for Disease Control & Prevention, https://www.cdc.gov/ healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_ calculator.html (last checked August 28, 2022).

Hypertension

"High blood pressure, also called hypertension, is blood pressure that is higher than normal. . . . High blood pressure is defined as 130 or higher for the first number, or 80 or higher for the second number." https://www.mayoclinic.org › syc-20373410 (last visited August 28, 2022). Without revisiting Mr. Island's elevated blood pressure readings during 2020-21, during the first half of 2022, he had a number of readings in the hypertension stage I range of 130-130/80-89 and at least two readings in the hypertension stage II range of 140-159/90+.   (Docket 59 at pp. 2, 27, 48, 51; 66 at p. 6 &

67 at p. 10).   On July 12, 2022, BOP identified the results of these reading as "elevated blood pressure w/o diagnosis of [hypertension]."   (Docket 67 at p. 17). But on October 12, 2021, Mr. Island's hypertension was diagnosed during a physician's review of systems and defendant's blood pressure reading of 125/78. (Docket 59 at pp. 193-94).

The court accepts the BOP physician's diagnosis of hypertension even though a number of those conducting medical examinations at Butner did not accept hypertension as a diagnosis.   BOP is not providing Mr. Island prescription medication to manage his hypertension.   (Docket 59 at p. 196).

<u>Anxiety Disorder</u>

On January 11, 2021, a BOP physician diagnosed Mr. Island's anxiety disorder and prescribed buspirone.   <u>Id.</u> at p. 299.   Buspirone continued to be prescribed through October 4, 2021, while Mr. Island was at FCI Florence.   <u>Id.</u> at pp. 287-88, 245.   Upon his arrival at FMC Butner on October 5, 2021, his anxiety disorder prescription was changed to Venlafaxine.   <u>Id.</u> at p. 202.   His medication was changed to injections of Lorazepam and morphine sulfate on November 16, 2021.   <u>Id.</u> at p. 196.   As of June 9, 2022, the BOP still identifies anxiety disorder as one of Mr. Island's principal health issues.   (Docket 66 at p. 104).   It does not appear from the record that Mr. Island's anxiety disorder is currently being controlled by medication.   <u>See</u> Docket 67 at pp. 22-23.

<u>Diffuse Large B Cell Non-Hodgkin's Lymphoma</u>

In mid-2021 Mr. Island contracted Non-Hodgkin's Lymphoma ("Lymphoma").  (Docket 59 at p. 1).  This aggressive Lymphoma required an extensive set of diagnostic examinations, chemotherapy, radiation therapy to his head and neck area, dental work, pain medications and follow-up care. (Dockets 59, 66 & 67).  Treatment for this disease extended into the spring of 2022.[2]  <u>Id.</u>

On July 5, 2022, Mr. Island received a whole body PET/CT scan.[3] (Docket 67 at p. 29).  The findings from the scan were:

> The previously noted prominent osseous uptake is no longer seen with more normal-appearing osseous uptake. The parotid uptake has decreased in prominence as compared to the prior study. No definitive abnormal uptake of the head or neck is noted. No evidence of adenopathy of the head or neck. There is mildly prominent uptake of the esophagus, most suggestive of muscular/physiologic activity. There is same question of distal esophageal wall thickening versus small hiatal hernia, and minimal esophageal inflammation cannot be excluded. This appearance is not changed significantly. No definitive abnormal tracer uptake of the abdomen or pelvis is noted, There is likely diverticulasis of the sigmoid colon, which is chronic.

---

[2]It was the court's concern for the results of a scheduled June 2022 PET scan which justified the June 17, 2022, order.  (Docket 65).

[3]"A positron emission tomography (PET) scan is an imaging test that can help reveal the metabolic or biochemical function of . . . tissues and organs. The PET scan uses a radioactive drug (tracer) to show both normal and abnormal metabolic activity. . . . The tracer will . . . collect into areas of [the] body that have higher levels of metabolic or biochemical activity, which often pinpoints the location of the disease."  https://www.mayoclinic.org/tests-procedures/ pet-scan/about/pac-20385078 (last visited August 28, 2022).  "Cancer cells show up as bright spots on PET scans because they have a higher metabolic rate than do normal cells."  <u>Id.</u>

Id.  The radiologist's interpretation of the scan was that "[n]o definitive

abnormal tracer uptake [was] noted."  Id.

On July 12, 2022, a BOP oncologist met with Mr. Island.  Id. at p. 1.

The physician reported the PET/CT disclosed "NED" at the earlier site of

Mr. Island's lymphoma.  Id.  "NED," or "no evidence of disease" is

another way to state "that no cancer is currently detectable in the body."

https://www.mdanderson.org/cancerwise/remission--cancer-free--no-

evidence-of-disease--what-is-the-difference-when-talking-about-cancer-

treatment-effectiveness-and-results.h00-159460845.html (last visited

August 28, 2022).  Mr. Island was pleased with the report and indicated

he was no longer in pain.  (Docket 67 at p. 1).  The physician charted that

Mr. Island "will need surveillance at this point" and recommended a

follow-up "CT in 6 months."  Id.

## ANALYSIS

### Administrative Exhaustion

Section 3582(c) permits the district court to consider a prisoner's request

for compassionate release after he exhausts the administrative remedies

mandated by the statute.

> [T]he court . . . upon motion of the defendant after the defendant has
> fully exhausted all administrative rights to appeal a failure of the
> Bureau of Prisons to bring a motion on the defendant's behalf or the
> lapse of 30 days from the receipt of such a request by the warden of
> the defendant's facility, whichever is earlier, may reduce the term of
> imprisonment (and may impose a term of probation or supervised
> release with or without conditions that does not exceed the unserved
> portion of the original term of imprisonment), after considering the

> factors set forth in section 3553(a) to the extent that they are
> applicable, if it finds that . . . extraordinary and compelling reasons
> warrant such a reduction . . . and that such a reduction is consistent
> with the applicable policy statements issued by the Sentencing
> Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

The court finds Mr. Island exhausted the administrative procedure provision contemplated by § 3582(c)(1)(A).   (Docket 59 at pp. 576-78).   The government does not argue the administrative exhaustion requirement was not satisfied.   (Docket 63).   Accordingly, Mr. Island's motion may be addressed on its merits.

### Extraordinary and Compelling Reasons

"Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release."   United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020).   That task was left to the United States Sentencing Commission.   "[I]n promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) . . . [the Sentencing Commission] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."   28 U.S.C. § 994(t).

Prior to the First Step Act, the Sentencing Commission established four categories for "extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."   28 U.S.C.

§ 994(t).   Those categories generally focus on the defendant's age, medical condition, family situation and any other reasons the BOP deems to be extraordinary and compelling.   U.S.S.G. § 1B1.13 comment. n.1.   The four categories have not been updated since December 2018 when the First Step Act became law.[4]

The United States Courts of Appeals for the Second, Fourth, Sixth and Seventh Circuits have addressed the court's authority under the First Step Act.[5] See United States v. Brooker, 976 F.3d 228 (2d. Cir. 2020); McCoy, 981 F.3d at 271; United States v. Jones, 980 F.3d 1098 (6th Cir. 2020); and United States v. Gunn, 980 F.3d 1178 (7th Cir. 2020).   Addressing Section 404(c) of the First Step Act, the Supreme Court recently held "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act."   Concepcion v. United States, ___ U.S. ___, 142 S. Ct. 2389, 2404 (2022).   The purpose of the First Step Act was to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to

---

[4]Until this past month the United States Sentencing Commission lacked a quorum and the newly established commission has not amended the United States Sentencing Guidelines.

[5]The United States Court of Appeals for the Eighth Circuit had several opportunities to address this issue but declines to do so.   United States v. Vangh, 990 F.3d 1138, 1141 n.3 (8th Cir. 2021); United States v. Loggins, Jr., 966 F.3d 891 (8th Cir. 2020) and United States v. Rodd, 966 F.3d 740 (8th Cir. 2020).   At best, the Eighth Circuit skirted resolving the issue by proclaiming "the First Step Act in 2018 did not change the discretion afforded the district court."   United States v. Marcussen, 15 F.4th 855, 859 (8th Cir. 2021) (internal citation omitted).

those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.

Turning to that task, medical records substantiate Mr. Island's serious health conditions as identified above.   Cancer and hypertension are included on the CDC's list of risk-increasing conditions.[6]   See People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited August 28, 2022).   Regardless of age, such conditions increase the risk of severe illness from COVID-19.   Id.   Additionally, it is also instructive that CDC guidance explains "[a] person's risk of severe illness from COVID-19 increases as the number of underlying medical conditions they have increases."   Id.

Mr. Island falls into the overweight category with a BMI of 28.7.   Being overweight is another condition that *can* increase the risk of severe illness from COVID-19.   The CDC instructs the "risk of severe COVID-19 illness increases sharply with elevated BMI."   See https://www.cdc.gov/coronavirus/2019-cov/

---

[6]The CDC indicates adults of any age *are* at increased risk of severe illness from COVID-19 if they have certain conditions, including cancer . . . heart conditions (such as heart failure, coronary artery disease, or cardiomyopathies), . . . .   See People with Certain Medical Conditions, https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated December 29, 2020).   The CDC identifies hypertension as a condition that *might* increase the risk from COVID-19.   Id.

12

need-extra-precautions/people-with-medical-conditions.html (last checked
August 28, 2022).   Though Mr. Island's BMI is technically elevated, he is not in
the range of BMI that would persuade the court to consider release for
extraordinary and compelling reasons.   Cf. United States v. Waters, CR.
18-50008, 2021 WL 603152, at *2-3 (D.S.D. Feb. 16, 2021) (granting
compassionate release to morbidly obese defendant with hypertension,
pulmonary hypertension, atrial fibrillation, heart disease, asthma, and several
other conditions).

The CDC has identified factors that increase community spread of
COVID-19 and individual risk, including crowded situations, enclosed spaces
and close or physical contact among people, especially for longer durations.   See
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/
people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2F
www.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fcovid-data%2Finvestigations-di
scovery%2Fhospitalization-underlying-medical-conditions.html (last updated
Oct. 16, 2020).   The court recognizes the efforts BOP has taken to prevent and
mitigate outbreaks.   See BOP Modified Operations, https://www.bop.gov/
coronavirus/covid19_status.jsp (last updated Nov. 25, 2020).   Nevertheless,
despite the efforts to slow the spread of COVID-19 in prisons, the practical reality
is many of the factors increasing community spread and individual risk of
exposure to the virus are simply unavoidable in a prison setting.   Nor can the

court ignore the potential of infection when the risk for Mr. Adkins is significant. The new strains and variants of COVID-19 only add to the risk and uncertainty.

The court recognizes the BOP's implementation of a COVID-19 vaccination program.   See BOP: COVID-19 Update, https://www.bop.gov/coronavirus/. But it is concerning that Mr. Island has not received the first or second booster shot.

It is evident Mr. Island's treatment at FMC Butler has been successful. With this record, the court finds Mr. Island cannot meets his burden of proof and presents extraordinary and compelling reasons under § 3582(c)(1)(A)(i).

**3553(a) Factors**

The court concludes the § 3553(a) factors do not support relief.   These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public from further crimes of the defendant, among others.   Id. § 3553(a)(1)-(7).

Mr. Island pled guilty to possession with intent to distribute a controlled substance, methamphetamine.   (Dockets 20, 21 & 27).   The remaining count of the indictment, possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1), was dismissed as part of the plea agreement.   (Docket 20 ¶ C).   On June 9, 2020, the court sentenced Mr. Island to 92 months custody.   (Docket 39 at p. 2).

14

At sentencing, the court adopted Mr. Island's presentence investigation report without change.   (Docket 39-1 at p. 1).   The crime of conviction was Mr. Island's seventh drug related offense dating back to 1999.   (Docket 32 at pp. 7-14).   In addition, Mr. Island has three convictions for driving while under the influence of alcohol.   Id. at pp. 8-12.   Two past arrests beginning in 2003 involved defendant's possession of firearms.   Id. ¶¶ 29 & 38.   At the time of sentencing, with a criminal history score of 17, Mr. Island was in criminal history category VI, the highest possible category under the Sentencing Guidelines.   Id. ¶ 54.

Mr. Island successfully completed two out-patient treatment programs prior to the events leading up to his arrest for the current conviction.   Id. ¶ 73. Mr. Island's time in custody has been focused on cancer treatment.   While he expressed an interest in substance abuse treatment, Mr. Island has not yet had an opportunity to fully participate in the BOP intensive substance abuse treatment program the court recommended to the BOP.   (Docket 39 at p. 2). The court finds his time in custody is insufficient to help him break the cycle of drug abuse.   Hopefully, Mr. Island will find that path and sincerely devote himself to substance abuse treatment while in custody.

The court sentenced Mr. Island to a sentence of 92 months.   That sentence reflects the seriousness of his offense, provides appropriate punishment, promotes respect for the law and hopefully deters criminal conduct.

## ORDER

No good cause having been proven, it is

ORDERED that defendant's motion for compassionate release (Docket 56) is denied.

Dated September 16, 2022.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE